Argued and submitted May 10, 2011, affirmed January 25, 2012

## Judith E. LUCKE,
*Petitioner,*

*v.*

## DEPARTMENT OF PUBLIC SAFETY STANDARDS AND TRAINING,
*Respondent.*

Department of Public Safety Standards and Training
40340; A142956

270 P3d 251

Thomas K. Doyle argued the cause for petitioner. With him on the briefs was Bennett, Hartman, Morris & Kaplan, LLP.

Judy C. Lucas, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.*

BREWER, C. J.

---

* Brewer, C. J., *vice* Duncan, J.

**BREWER, C. J.**

Petitioner seeks judicial review of a final order of the Department of Public Safety Standards and Training (DPSST) that revoked her corrections certificates based on a finding that she had "been discharged for cause from employment as a public safety officer." ORS 181.662(4). Petitioner asserts that DPSST erred in deciding the case on summary determination because genuine issues of material fact existed and that neither substantial evidence nor substantial reason supports DPSST's decision. As explained below, we conclude that DPSST properly revoked petitioner's corrections certificates, and, accordingly, we affirm.

A brief description of the procedural history of the case is necessary before we turn to the facts. In October 2007, DPSST initiated this contested case proceeding by issuing a notice of its intent to revoke petitioner's certificates pursuant to ORS 181.662(4) and OAR 259-008-0070(2)(a),[1] on the ground that petitioner had been discharged from employment with the Multnomah County Sheriff's Office for cause. The event that precipitated the termination involved petitioner having left a loaded firearm unsecured on a bench in an unlocked locker room at the jail, where it remained undiscovered for approximately eight hours. This proceeding was held in abeyance while petitioner pursued a grievance of her termination. The grievance ultimately resulted in an arbitration decision upholding petitioner's dismissal for "just cause" as that term is defined by the collective bargaining agreement between petitioner's employer and her union.

After the conclusion of the arbitration proceeding, DPSST—which utilizes the Office of Administrative Hearings (OAH) for its contested case proceedings—moved for summary determination of the legal issues pursuant to OAR 137-003-0580 and submitted as exhibits numerous documents pertaining to petitioner's employment history with the Multnomah County Sheriff's Office, as well as the decision and various exhibits from the arbitration proceeding.

---

[1] OAR 259-008-0070 has undergone significant substantive amendment since this case was initiated. All references in this opinion are to the 2006 version of the rule which was in effect when DPSST initiated this contested case proceeding.

DPSST asserted that there was no genuine issue as to any material fact and that it was entitled to a favorable ruling as a matter of law. Petitioner did not oppose DPSST's motion for summary determination. The matter was assigned to an administrative law judge (ALJ) from the OAH, who issued a ruling on summary determination and a proposed order concluding that petitioner's certifications should be revoked pursuant to ORS 181.662(4) and OAR 259-008-0070(2)(a). Petitioner filed exceptions to the proposed order, arguing, in part, that "the evidence regarding standard of care all support[s] [petitioner's] position in this matter. * * * [T]he standard of care was in dispute. Thus, this issue cannot, and should not, be resolved through a summary determination." Petitioner further argued that the proposed order was not supported by substantial evidence or substantial reason. DPSST rejected petitioner's exceptions and adopted the proposed order.

On judicial review, petitioner raises various challenges to the order. Before turning to petitioner's specific arguments, we describe our standard of review as well as the pertinent facts viewed under that standard. OAR 137-003-0580 provides for an administrative "summary determination" proceeding that is akin to a trial court summary judgment proceeding under ORCP 47. It provides, in pertinent part, that an ALJ

"shall grant the motion for a summary determination if * * * [t]he pleadings, affidavits, supporting documents (including any interrogatories and admissions) and the record in the contested case show that there is no genuine issue as to any material fact that is relevant to resolution of the legal issue as to which a decision is sought; and * * * [t]he agency or party filing the motion is entitled to a favorable ruling as a matter of law."

OAR 137-003-0580(6). The ALJ is required to view the evidence in the light most favorable to the nonmoving party. OAR 137-003-0580(7).[2]

_____

[2] Additionally, OAR 137-003-0580(10) provides that, "[w]hen a motion for summary determination is made and supported as provided in this rule, a non-moving party or non-moving agency may not rest upon the mere allegations or denials contained in that party's or agency's pleading," and that the ALJ "must explain the requirements for filing a response to any unrepresented party or parties." As noted,

In the proposed order, the ALJ included in his findings of fact the following findings that had been made in the arbitration proceeding:

> "[Petitioner] left her loaded firearm unsecured in the women's locker room of a Multnomah County Jail facility with no awareness of its absence. [Petitioner] carried an off-duty weapon under the authority of the Multnomah County Sheriff's Office. In order to carry the weapon, she had to receive Multnomah County Sheriff Office training and meet Sheriff's Office qualifications. On January 23, 2007, [petitioner] was assigned to work at a Multnomah County Jail facility. She completed her shift and went home. A supervisor found a black fanny pack on the bench in the women's locker room. The supervisor picked up the pack and could tell it contained a weapon. The weapon had no identification. The supervisor took the weapon to another supervisor, who checked the firearms records and discovered it belonged to [petitioner]. [Petitioner] had forgotten and left her weapon in the locker room. Although the locker room had a lock on the door, the door was rarely locked. Those who had access to that area included female deputies, civilian staff, contractors, volunteers, a supervised female inmate janitorial crew, and occasionally staff who brought members of their families (public members) for lunch.
>
> "* * * * *
>
> "Correction officers can be authorized to carry on duty or off duty firearms, depending on the standard operating procedures of their agency and their assignment. Corrections [officers] are responsible generally for the security and safe storage of any firearm in their custody."

The ALJ also adopted numerous additional factual findings that the arbitrator had made concerning five previous incidents for which petitioner had received sanctions, including reprimands and suspensions without pay. The ALJ concluded:

---

petitioner did not oppose the agency's motion. However, because DPSST did not take the position that petitioner's failure to comply with OAR 137-003-0580(10) precluded consideration of her exceptions to the ALJ's proposed order, and, in fact, DPSST considered those exceptions, we reject DPSST's argument, made for the first time on judicial review in this court, that petitioner's failure to oppose the motion for summary determination precludes her from challenging the summary determination on review.

"[Petitioner] engaged in gross negligence by leaving a firearm unsecured in an area accessed by non-authorized persons and inmates. [Petitioner's] conduct placed persons in danger and was a deviation from the standard of care that a reasonable public safety professional would observe. Her conduct demonstrated poor judgment and placed innocent lives at stake.

"[Petitioner's] actions or failures to act created a danger or risk to persons, property or the efficient operation of the sheriff's office, and constituted a gross deviation from the standards of care that a reasonable public safety officer would have observed in similar circumstances."

The ALJ also concluded that each of the five previous incidents had involved gross negligence. As explained below, we need not reach the parties' arguments concerning whether the ALJ properly considered those five incidents, because we conclude that DPSST's revocation of petitioner's certifications was justified based on the incident involving the unattended firearm that precipitated her termination from employment with the sheriff's office.

As noted, DPSST adopted the ALJ's proposed order and, in a final order, rejected petitioner's exceptions. In the final order, DPSST noted that petitioner disputed "whether cause for *termination* existed" (emphasis added) but held that that question was not within its jurisdiction, citing *Huesties v. BPST*, 95 Or App 17, 767 P2d 465, *rev den*, 307 Or 658 (1989). After an independent review of the factual basis for the discharge, DPSST further concluded that petitioner's "conduct constituted discharge for cause under the applicable statutory and regulatory standards."

Petitioner makes numerous arguments on judicial review. Initially, petitioner asserts that the order lacks substantial reason because the board "abdicated its jurisdiction" to determine whether petitioner was terminated "for cause." As explained below, we conclude that petitioner's understanding of the final order is incorrect.

ORS 181.662(4) provides:

"[DPSST] shall deny, suspend or revoke the certification of any public safety officer or instructor * * * after written

notice and hearing * * * based upon a finding that the public safety officer or instructor has been discharged *for cause* from employment as a public safety officer."

(Emphasis added.) DPSST promulgated OAR 259-008-0070(2)(a), which defined discharge "for cause" for these purposes as follows:

"(A)   Gross Negligence: means where the public safety professional's act or failure to act creates a danger or risk to persons, property, or to the efficient operation of the department, recognizable as a gross deviation from the standard of care that a reasonable public safety professional would observe in a similar circumstance;

"(B)   Insubordination: means a refusal by a public safety professional to comply with a rule or order where the rule or order was reasonably related to the orderly, efficient, or safe operation of the public or private safety agency and where the public safety professional's refusal to comply with the rule or order constitutes a substantial breach of that person's duties; or

"(C)   Incompetence or Gross Misconduct: in determining what constitutes 'incompetence or gross misconduct,' sources the Department may take into account include but are not limited to practices generally followed by the profession, current teaching at public safety training facilities, and technical reports and literature relevant to the fields of law enforcement, telecommunications, or emergency medical dispatch."

In *Huesties*, we considered a petitioner's challenge to DPSST's predecessor agency's revocation of his certificates based on a finding of "gross misconduct" under ORS 181.662 and a predecessor administrative rule that is similar in pertinent respects to OAR 259-008-0070(2)(a)(C). 95 Or App at 19. On judicial review, the petitioner argued that the discharge was "invalid" because it was retaliatory and that the employer had failed to abide by various procedural requirements. *Id.* at 20. The agency argued that its role was to independently review the factual basis for the discharge in order to determine whether it was "for cause" as required by ORS 181.662. We agreed with the agency, stating that "nothing in the statutory scheme is consistent with petitioner's view that the legislature intended that [the agency] have authority to

review the employer's discharge decision, as distinct from determining whether the decision was or could have been for sufficient cause." *Id.*

Read in context and in light of its citation to *Huesties*, we understand DPSST to have indicated in its final order in this case that it was not considering petitioner's numerous arguments that she should not, in fact, have been terminated from employment. Rather, DPSST limited its inquiry to whether the termination decision was or could have been "for cause" as that term is defined by ORS 181.662 and OAR 259-008-0070(2)(a). We reject without further discussion petitioner's argument that DPSST "abdicated" its role to make a determination of cause under the pertinent statute and rule.

In a related argument, petitioner suggests that DPSST failed to fulfill its statutory duties because it "gave preclusive effect" to the arbitration decision, which, as noted above, the ALJ had relied on for certain factual findings. We disagree with petitioner's assertion. Although it adopted certain factual findings of the arbitrator, the ALJ's proposed order also contained numerous citations to exhibits in the summary determination record that support the ALJ's findings of fact. In particular, the ALJ relied on the affidavit of an expert—a "Professional Standards Coordinator" with DPSST who had more than 28 years' experience in law enforcement—to support his conclusion that the firearms incident described above constituted "gross negligence" for purposes of OAR 259-008-0070(2)(a)(A).

Petitioner next argues that summary determination was inappropriate because there were disputed issues of material fact related to

> "what was the basis for termination itself, the factual circumstances of the firearm being unattended, the standard of care relating to firearms in correction officer's locker rooms, the degree of access by the public and the potential for danger to fellow officers or the public. Moreover, there was evidence that unsecured weapons were a frequent occurrence—certainly the standard of care was in dispute."

We conclude that, although not *per se* fatal to her claims, *see* 247 Or App at 633-34 n 2, petitioner's failure to

file a response to the motion for summary determination defeats her argument. That is, DPSST's evidence on each of those points was uncontradicted because petitioner failed to adduce any evidence at all. Thus, the question is whether DPSST's evidence, viewed in the light most favorable to petitioner, demonstrates that there is any genuine issue of material fact as to any of those points. We consider each point in turn.

First, petitioner asserts that there is a question as to "the basis for the termination itself." Petitioner argues that the five previous incidents for which she was disciplined were not the basis for her termination and that the ALJ, and subsequently, DPSST, erred in concluding otherwise. A review of the record reveals no genuine issue of material fact as to the basis for petitioner's termination. The event that precipitated the termination was the incident concerning the loaded gun left unattended in the locker room. That was the ground for termination cited in the sheriff's letter terminating petitioner's employment, and no evidence to the contrary was presented. The evidence demonstrates that the sheriff's office has a system of progressive corrective action and that the five previous incidents that had resulted in corrective action played a significant part in the sheriff's decision to terminate petitioner, rather than impose a lesser sanction. However, the record does not reveal any genuine issues of material fact concerning the basis for the termination.

Petitioner next argues that there are genuine issues of material fact concerning "the factual circumstances of the firearm being unattended." She does not explain what those facts are, nor does the record reveal any dispute concerning the historical facts. Indeed, the factual findings concerning the circumstances in which the weapon was left unattended were based in large part on petitioner's own admissions as to what had happened.

Petitioner next asserts that there is a genuine issue of material fact as to "the standard of care relating to firearms in correction officer's locker room." Specifically, petitioner asserts that "the evidence regarding standard of care all support[s] [petitioner] in this matter." We disagree. DPSST introduced an uncontroverted affidavit from an

expert indicating that petitioner's conduct in leaving the gun unattended in these circumstances placed people at risk and "was a deviation from the standard of care that a reasonable public safety professional would observe." Petitioner's failure to controvert that evidence defeats her argument on judicial review. *Cf. Perry v. Rein*, 215 Or App 113, 126, 168 P3d 1163 (2007) ("Uncontradicted testimony cannot be controverted on summary judgment simply by asserting that it should not be believed.").

Petitioner also suggests that there is a genuine issue of material fact as to "the degree of access by the public and the potential for danger to fellow officers or the public." Again, we disagree. The record reveals no factual dispute concerning that issue. The evidence showed that the locker room in which the weapon was left is connected by a door to a restroom in the jail that is used by police officers, civilian staff, contractors, volunteers, and people who visit the staff, and that the door is propped open most of the time. The locker room and restroom are accessed once a day by a supervised inmate work crew. Although petitioner asserts, without citation to the record, that the door between the restroom and the locker room "was supposed to be locked but was left open by other officers on the day in question," we find no support in the record for that assertion. The uncontradicted evidence in the record was that the door was propped open nearly all the time; no evidence was presented as to who had propped the door open on any particular occasion.

Finally, petitioner asserts that "there was evidence that unsecured weapons were a frequent occurrence." We find no such evidence in the record. In her decision, the arbitrator mentioned several other instances of violations of the sheriff's rules concerning the safe storage of firearms that had resulted in sanctions other than termination of the employees involved, but the arbitrator explained at length why those "incidents are not substantially similar to the circumstances of this case." Moreover, even if petitioner were correct that such evidence had been presented, we fail to see how evidence that other officers had engaged in the same type of rule violation that had resulted in petitioner's termination would create a genuine issue of material fact that is

pertinent to the issues presented here. At most, such evidence would serve as the basis for a claim of unequal treatment by the employer, which is the purpose for which it was introduced during the arbitration. However, as noted, it is not DPSST's function to second-guess the employer's termination decision. *See Huesties,* 95 Or App at 20.

In sum, petitioner was terminated as a result of her conduct involving the loaded weapon left unattended in the jail locker room. DPSST found that that conduct constituted "gross negligence" for purposes of ORS 181.662(4) and OAR 259-008-0070(2)(a). DPSST presented uncontradicted evidence that petitioner's conduct created a danger to people and that it was a "gross deviation from the standard of care that a reasonable public safety professional would observe in a similar circumstance." OAR 259-008-0070(2)(a)(A).

Most of the parties' remaining arguments concern the propriety of DPSST making determinations as to whether the five previous incidents for which petitioner had been disciplined constituted "cause" for purposes of OAR 259-008-0070(2)(a)(A). In light of our conclusion that substantial evidence supports DPSST's determination that the incident involving the unsecured firearm left in the jail constituted "discharge for cause" under the "gross negligence" prong of the definition in OAR 259-008-0070(2)(a)(A), we need not address that issue.

We conclude that substantial evidence and substantial reason support DPSST's decision.

Affirmed.