Argued and submitted March 11, reversed and remanded May 15, 2003

Kenneth R. PERRY,
*Appellant,*

*v.*

Scott J. REIN;
Dressler, Rein, Evans & Sestanovich, LLP,
a California limited liability partnership;
Stuart I. Teicher;
and Sussman, Shank, Wapnick, Caplan & Stiles, LLP,
an Oregon limited liability partnership,
*Respondents.*

0009-09797; A116471

71 P3d 81

Linda K. Williams argued the cause for appellant. With her on the briefs was Kafoury & McDougal.

Richard Stone argued the cause for respondents Scott J. Rein, and Dressler, Rein, Evans & Sestanovich, LLP. With him on the briefs was Ball, Janik, LLP.

David. C. Landis argued the cause and filed the brief for respondents Stuart I. Teicher, and Sussman, Shank, Wapnick, Caplan & Stiles, LLP.

Before Edmonds, Presiding Judge, and Kistler and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Plaintiff, an Oregon attorney, appeals from the trial court's grant of summary judgment in favor of defendants, who are also attorneys, on plaintiff's claim for wrongful initiation of civil proceedings. ORCP 47. Plaintiff contends that the trial court erred in determining, as a matter of law, that defendants had probable cause to prosecute the underlying action, an action that alleged that plaintiff had, among other things, conspired to defraud a third party of $1 million. We reverse and remand.

Because this case was resolved on a motion for summary judgment, we view the summary judgment record in the light most favorable to plaintiff, the nonmoving party, to determine if genuine issues of material fact exist and if defendants are entitled to judgment as a matter of law. ORCP 47 C. The summary judgment evidentiary record includes the depositions of the parties, their affidavits, and a letter from plaintiff to one of the defendants. The somewhat complex web of facts of this case began in 1999, when plaintiff agreed to represent Mac Obioha (Obioha) on a civil matter. At the time, Obioha was in a federal prison in California. On October 5, 1999, Ann DeAbate (DeAbate), through her attorney, defendant Scott Rein (Rein), filed an action in the United States District Court in Connecticut seeking to recover $1 million of DeAbate's funds that allegedly had been wrongfully converted by Obioha, one of his associates, Michael Boyd (Boyd), and various other individuals. DeAbate had deposited the money into an offshore bank account for investment purposes, and, at some point, the money was removed from her account. At least some of that money, after it was removed from DeAbate's account, was deposited into Boyd's bank account. The Connecticut federal court issued a temporary restraining order (TRO) that same day, restraining Boyd and the other individuals from moving, transferring, or withdrawing any monies from their bank accounts.

The same day that DeAbate filed the action and the Connecticut federal court issued the TRO, Boyd wired $150,000 to plaintiff for purposes related to his representation of Obioha on a matter that was unrelated to the DeAbate

matter. It is unclear whether the money was wired before or after Boyd was served with the TRO. However, after a telephone conference with Rein, Boyd agreed to reverse the wire transfer. When it was learned that Boyd could not reverse the transfer, Rein called plaintiff on the morning of October 6. Plaintiff confirmed that he represented Obioha and that he had received the $150,000 from Boyd. Rein demanded that plaintiff return that money promptly. According to plaintiff, he told Rein that he had contacted the Oregon State Bar and the Professional Liability Fund to seek advice regarding his legal and ethical obligations concerning the disposition of the funds and that he was awaiting instructions from the Bar. He said that he would contact Rein after he had received guidance from the Bar. In his deposition, Rein testified that plaintiff refused to return the money in his account or to give any assurances that he would not disburse it. In an affidavit in the summary judgment record, Rein averred that plaintiff refused to reverse the wire transfer or to agree to freeze the funds until plaintiff had an opportunity to speak to the Bar.

At some point later that day, Rein again contacted plaintiff by telephone. According to plaintiff, he told Rein that he had received advice from the Bar and that he had been advised to contact his client and then respond to Rein's proposals regarding disposition of the funds by the end of the day on October 7 or the morning of October 8 at the latest. Rein averred in his affidavit that, in the second conversation, plaintiff "simply reiterated his previous statement" and refused to agree to return the money.

Plaintiff contacted his client and then called Rein and defendant Teicher, DeAbate's Oregon counsel, on October 7. He advised them that he was making arrangements to have the money sent back. On that same day, defendants filed a complaint in federal district court in Oregon on behalf of DeAbate, alleging that plaintiff had conspired to defraud DeAbate of $1 million, that he had converted no less than $1 million of DeAbate's funds, and that he had been unjustly enriched in that same amount. The complaint requested that a constructive trust be imposed on the $150,000 that plaintiff had received and on the $1 million that defendants alleged plaintiff had converted.

On that same day, defendants also obtained a temporary restraining order, an order to show cause why the court should not issue a preliminary injunction, and a writ attaching the sum of $150,000 in plaintiff's bank account. In support of those requested remedies, defendants represented to the court that their restraining order and injunction requests were "founded upon the undisputed fact that the funds which [plaintiff] is holding are [DeAbate] funds to which he is a constructive trustee[.]" The order to show cause, in relation to plaintiff, stated that plaintiff was required to appear and to show cause why the court should not issue an injunction preventing him from disbursing the $150,000. On or about October 12, plaintiff gave instructions to his bank to return the $150,000 to Connecticut. A hearing on the show cause order was held on October 19. Plaintiff's attorney informed the court that plaintiff had returned the money and requested that the TRO be vacated as to plaintiff. Opposing counsel acknowledged that plaintiff had returned the money, but requested that the TRO not be dismissed because

"our efforts to get [plaintiff] to voluntarily disclose how he came into possession of Miss DeAbate's funds have been unanswered.

"* * * * *

"[A]ll we ask of [plaintiff] is that he doesn't help orchestrate Mr. Obioha's assets from the court's jurisdiction and that no documentary or other kind of evidence is destroyed or removed from the court's jurisdiction, and that is it.

"* * * * *

"In the normal course of events, maybe we'll find out exactly what [plaintiff's] role is in this, but at this time all we are asking is that [plaintiff] be ordered not to destroy evidence, which I believe is his duty as an officer of the court, member of the bar, anyway, and not to assist Mr. Obioha in violating his injunction[.]"

The court declined to vacate the TRO as to plaintiff and granted the preliminary injunction, holding that the "status quo order will be continued."

The following month, the matter was settled between Boyd, Obioha, and DeAbate. Pursuant to the terms

of that settlement, Boyd returned DeAbate's money, and DeAbate filed an amended complaint in the Oregon action; as part of that complaint, DeAbate dropped all claims against plaintiff except the claim for a constructive trust. The complaint continued to allege that plaintiff held $150,000 of DeAbate's funds. The settlement agreement also mandated that the amended complaint be dismissed against Boyd and Obioha with prejudice and against plaintiff, but without prejudice. At no time was plaintiff ever a party to settlement negotiations or the final settlement itself. One day after filing the amended complaint, the Oregon federal district court dismissed the action against plaintiff.

Plaintiff subsequently filed this action, alleging that defendants had wrongfully used civil proceedings against him. He contends that, while the claim for a declaration of a constructive trust claim in the original complaint for $150,000 was legally justified, the allegations that he intended to or conspired to defraud DeAbate of $1 million constituted a tortious, wrongful use of a civil proceeding. In response to plaintiff's complaint, defendants moved for summary judgment in the trial court on the ground that several of the elements of a claim for wrongful use of civil proceedings were not satisfied. Defendants argued that there were no material facts in dispute and that, as a matter of law, probable cause existed for bringing the $1 million conversion action against plaintiff. Also, they argued that the evidence showed that the underlying action terminated in their favor and that plaintiff had failed to demonstrate that they acted with malice. The trial court agreed that plaintiff had failed to demonstrate that defendants lacked probable cause for filing the Oregon action, and it granted summary judgment in favor of defendants. The court did not reach the issue of whether the underlying proceeding terminated in plaintiff's favor or whether defendants acted with malice in bringing the underlying action.

■ On appeal, the parties make some of the same arguments that they made in the trial court.[1] Under Oregon law,

---

[1] On appeal, defendants do not pursue their contention that plaintiff is unable to demonstrate that they acted with malice when they filed the action against plaintiff.

the elements of a claim for wrongful initiation of a civil proceeding are:

"(1)  The commencement and prosecution by the defendant of a judicial proceeding against the plaintiff;

"(2)  The termination of the proceeding in the plaintiff's favor;

"(3)  The absence of probable cause to prosecute the action;

"(4)  The existence of malice or as is sometimes stated, the existence of a primary purpose other than that of securing an adjudication of the claim; and

"(5)  Damages."

*Alvarez v. Retail Credit Ass'n*, 234 Or 255, 259-60, 381 P2d 499 (1963). The question of probable cause is a question of law once the facts are determined. *Id.* at 261 (*citing Hess v. Oregon Baking Co.*, 31 Or 503, 515, 49 P 803 (1897)). In general, if the facts germane to the determination of probable cause are in dispute, then the case must be decided by a factfinder before the legal determination of probable cause is made. *Kuhnausen v. Stadelman*, 174 Or 290, 310-11, 148 P2d 239, 149 P2d 168 (1944). For purposes of a claim of wrongful initiation of civil proceedings, "probable cause" means that the person initiating the civil action reasonably believes that he or she has a good chance of establishing his claim to the court's satisfaction. *Erlandson v. Pullen*, 45 Or App 467, 475, 608 P2d 1169 (1980).

Thus, the "probable cause" standard has two subparts: The person initiating the claim must believe that there is a good chance of establishing the claim in court and that belief must be objectively reasonable. In plaintiff's view, the evidence shows that, even after Rein and Teicher knew that plaintiff was going to return the $150,000, they kept him as a party to the action (1) in an effort to get more information from him about the alleged conspiracy and his client and (2) to endeavor to hold him liable for conversion of all of the monies taken from DeAbate's account. Those facts, if found by a factfinder, would result, in plaintiff's view, in a conclusion that defendants lacked probable cause for the initiation of a civil proceeding because there was neither a good chance

of establishing the claim in court nor was defendants' belief about the legal import of the facts objectively reasonable.

Defendants draw a different legal conclusion from the record regarding their understanding of the facts at the time they brought their claims against plaintiff. They point to (1) Boyd's acknowledgment that $1 million was wrongfully moved from DeAbate's account, into Boyd's account, in accordance with Obioha's instructions; (2) that $150,000 was wired from Boyd's account to plaintiff's account, based on Obioha's instructions; and (3) that, although plaintiff confirmed that the $150,000 had been credited to his account, he refused to reverse the wire transfer and refused to agree not to disburse the $150,000 while he attempted to consult with his client and the Oregon State Bar. According to defendants, those facts demonstrate the elements of a conspiracy of which plaintiff was a part, *i.e.*, he was "a person acting with knowledge that another's conduct constitutes a breach of duty to which he gave substantial assistance."

We are not persuaded by defendants' argument based on the summary judgment record. "Probable cause" to bring and to continue to prosecute the $1 million claim as a separate claim through alternative counts against plaintiff required evidence that plaintiff knowingly acted in concert with Obioha and his co-conspirators to defraud DeAbate of $1 million. The "probable cause" standard requires defendants to have had a *reasonable* belief that they could establish their claims in court against plaintiff for conspiracy to defraud, conversion, and money had and received, based on the evidence at hand. In the complaint filed in the Oregon federal district court, defendants alleged that plaintiff was part of the conspiracy to defraud DeAbate of $1 million. According to the complaint, "[t]he scheme was established with each party assigned a role in the conspiracy." Obioha and others "connived" DeAbate into opening a bank account from which they "caused to be transferred" $1 million without DeAbate's knowledge or consent. The complaint then alleges that $150,000 of that money, which "BOYD has admitted belongs to [DeAbate,]" was transferred to plaintiff's account. The only other allegation specific to plaintiff provides:

"[Plaintiff] has refused to return to [DeAbate], or to Summit
Bank, the $150,000 wired from BOYD's Summit Bank
account number * * * into his U.S. Bank account number
* * *."

There is no evidence in the record from which it can
be inferred that defendants *reasonably* believed that plaintiff
was involved in the alleged original scheme to defraud
DeAbate of her funds. As mentioned above, defendants focus
first on the fact that Boyd acknowledged that $1 million was
wrongfully taken from DeAbate. While that may be true, that
fact does not implicate plaintiff in that event. There is no evi-
dence in the record that, until he was notified by Rein that
money had been taken from DeAbate, plaintiff was even
aware of the events surrounding the alleged theft of
DeAbate's money.

Defendants also focus on the fact that $150,000 was
wired to plaintiff's account at the request of his client, but
that fact, by itself, is insufficient to establish probable cause
to believe that plaintiff participated in the conspiracy to take
the monies from DeAbate's account. Rein conceded as much
in his deposition. When asked what evidence he had that
plaintiff was involved in a conspiracy to steal or convert the
$1 million, Rein responded, "Nothing. I know that he had
been involved intimately in the movement of $150,000." Fur-
ther, Rein also stated in his deposition that he "didn't know
then and [wasn't] sure now" that plaintiff had anything to do
with moving or transferring any money other than the one
time $150,000 wire transfer. To infer that plaintiff was
involved in the fraudulent scheme to take money from
DeAbate's account only because he received money trans-
ferred from Boyd's account is a *non sequitur*. At a minimum,
joint liability for another's torts requires proof of some degree
of *scienter* among co-actors. *Granewich v. Harding*, 329 Or
47, 55, 985 P2d 788 (1999). At most, defendants may have
suspected that plaintiff was involved in the transfer of the
money from DeAbate's account to Boyd's account based on his
refusal immediately to return or agree not to dissipate the
$150,000 after Rein demanded that he do so. However, that
suspicion does not translate into evidence that justifies the
filing of a claim against plaintiff as a co-conspirator with his
client and Boyd, especially in light of the fact that plaintiff

told Rein that, until he received advice from the Oregon State Bar, he would take no action with respect to the money. At the time they filed the claims against plaintiff, defendants simply had no evidence in their possession that could be produced in court to prove their claim that plaintiff knowingly acted in concert with the rest of the conspirators to defraud DeAbate of $1 million, either directly or through a reasonable inference from known facts.

Defendants also rely on the fact that the Connecticut federal court found probable cause that DeAbate had an uncontroverted ownership interest in the money and the fact that it issued a restraining order against Boyd. However, at the time that Rein obtained the restraining order in Connecticut, plaintiff was not even known to defendants, and he was not a defendant in the Connecticut action. Although some of the money that was subject to the TRO issued by the Connecticut federal court was ultimately wired into plaintiff's account and plaintiff became aware thereafter of the Connecticut court's TRO, those facts merely prove that plaintiff ended up receiving part of the money from one of the alleged conspirators. Those facts do not provide defendants with probable cause to believe that plaintiff knowingly conspired in the alleged taking of the money from DeAbate's account.[2]

In sum, probable cause to file civil litigation requires a reasonable belief *before* the claim is filed that evidence exists to prove the allegations made against a particular defendant. It appears from this record that defendants expected to discover their probable cause evidence after the filing of their claims. We conclude that no reasonable lawyer could believe that the facts known to defendants at the time

---

[2] Defendants also maintain that the preliminary injunction issued by the Oregon district court is *prima facie* evidence of probable cause. However, defendants ignore the narrow ground on which the temporary restraining order and injunction, as to plaintiff, was sought. Defendants told that court that their claim was "founded upon the undisputed fact that the funds which [plaintiff] is holding are [DeAbate's] funds to which he is a constructive trustee" and that plaintiff needed to appear and show cause why he should not be prevented from disseminating the $150,000 that had been wired into his account. Those claims were all based on the $150,000, not the $1 million that plaintiff claims defendants wrongfully sued him for.

of the filing of the claims, if proven, could result in plaintiff's liability for the $1 million taken from DeAbate's account.

■    Defendants raise an alternative ground for affirming the trial court's decision. They argue that, although the trial court did not reach the issue, it could have properly concluded that the underlying proceedings did not terminate in favor of plaintiff.[3] That issue is complicated by the fact that the underlying action was terminated as a result of a settlement to which plaintiff was not a party and that resulted in a voluntary dismissal without prejudice of the action against him. We recently explored the implications of similar facts in *Portland Trailer & Equipment v. A-1 Freeman Moving*, 182 Or App 347, 49 P3d 803 (2002). We noted that

> "[t]he theme that unites the [Oregon cases on this issue] is that, in Oregon, the voluntary dismissal of an underlying action before a trial on the merits is favorable to the defendant if it reflects adversely on the merits of the underlying action. That determination does not necessarily depend on whether the dismissal was with, or without, prejudice. Instead, it requires an examination of the circumstances resulting in the termination. Such a fact-specific approach is consistent with the *Restatement (Second) of Torts* § 674 (1977). Comment j to section 674 explains: 'Civil proceedings may be terminated in favor of the person against whom they are brought under the rule stated in Clause (b), by (1) the favorable adjudication of the claim by a competent tribunal, or (2) the withdrawal of the proceedings by the person bringing them, or (3) the dismissal of the proceedings because of his failure to prosecute them. * * * Whether a withdrawal or an abandonment constitutes a final termination of the case in favor of the person against whom the proceedings are brought and whether the withdrawal is evidence of a lack of probable cause for their initiation, depends upon the circumstances under which the proceedings are withdrawn.' "

*Id.* at 356-57 (footnotes omitted). For instance, a voluntary termination may occur because the underlying claim lacked

---

[3] Although the trial court did not reach this issue, we can affirm on different grounds as long as there is evidence in the record to support those alternate grounds. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001).

merit. *Id.* at 357. On the other hand, a proceeding is not terminated in favor of a plaintiff when the action is terminated because of financial considerations, such as a party's belief that the potential recovery did not justify the cost of the litigation. *Id.* We went on to observe, however, that, due to the fact-intensive nature of the inquiry, the question whether a proceeding is terminated in favor of a plaintiff in a wrongful initiation of a civil action claim is often not well suited for resolution on a summary judgment record. *Id.*

Those observations also apply to the circumstances of this case. After plaintiff returned the $150,000, the other parties involved in the lawsuit negotiated to return all of DeAbate's funds to her. In return, DeAbate entered into a settlement agreement under which she agreed to dismiss the complaint as to all defendants, including plaintiff. Plaintiff was not required to give any consideration for the settlement, even though he ultimately benefitted from it. Those circumstances do not establish as a matter of law that the underlying proceeding terminated in favor of plaintiff as that requirement has been interpreted by the case law. One reasonable inference that can be drawn from the summary judgment record is that the dismissal as to plaintiff occurred because there was no reason to continue to believe that he was in any way involved in a scheme to conspire to defraud DeAbate of her money. If that inference is drawn from defendants' actions, then the claim was terminated in favor of plaintiff. On the other hand, it can also be inferred from the summary judgment record that the case was dismissed because the wrongdoers returned DeAbate's money to her and therefore any continuation of the case against plaintiff would not be financially prudent or for some other reason.[4] If that was the motivation for the settlement, then plaintiff would be unable to demonstrate a favorable termination. The existence of both inferences precludes summary judgment.

For the reasons expressed above, it was improper for the trial court to grant summary judgment on either ground raised in support of affirmance on appeal.

Reversed and remanded.

---

[4] At trial, the court should make its own legal determination as to what facts do or do not constitute a favorable termination based on the record before it.