Argued and submitted September 17, 2014, reversed and remanded on plaintiff's claim of wrongful initiation of a civil proceeding; otherwise affirmed May 6, 2015

Tambri DeHARPPORT,
*Plaintiff-Appellant,*

*v.*

William E. JOHNSON,
*Defendant-Respondent.*

Deschutes County Circuit Court
11CV0423; A154963

348 P3d 1192

Claud Ingram filed the briefs for appellant.

Jeffrey T. Eager argued the cause for respondent. With him on the brief was Balyeat & Eager, LLP.

Before DeVore, Presiding Judge, and Ortega, Judge, and Garrett, Judge.*

DEVORE, P. J.

---

* Ortega, J., *vice* Haselton, C. J.

## DEVORE, P. J.

Plaintiff appeals after the trial court dismissed her tort claims on summary judgment. Plaintiff had been a caregiver for a woman in defendant's home. Plaintiff brought claims against defendant for providing an unsafe workplace in violation of ORS 654.015, negligence related to risk from defendant's son, intentional infliction of emotional distress (IIED), and wrongful initiation of civil proceedings based on an abuse prevention order that defendant initiated against plaintiff. On appeal, plaintiff assigns several errors relating to her workplace, IIED, and wrongful initiation of civil proceedings claims. We reject without published discussion all assignments of error except her assignment concerning the wrongful initiation claim. On that claim, we conclude there were genuine issues of material fact that preclude summary judgment. We reverse and remand.

When reviewing an order granting a motion for summary judgment, we view the record in the light most favorable to the adverse party. *Dial Temporary Help Service v. DLF Int'l Seeds*, 255 Or App 609, 610, 298 P3d 1234 (2013) (citing *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997)).

Plaintiff was engaged by the Department of Human Services to provide homecare services to defendant's domestic partner. Plaintiff was not engaged to provide care for defendant. In a declaration, plaintiff reported that she got along well with the woman for whom she cared and that there were no problems between plaintiff and defendant "except for [his] sexual advances." Plaintiff recounted that, on an undescribed date, defendant "pinched me on my left nipple and I hit him and told him not to ever make such sexual contact again or he would be sorry." She told him that she had a boyfriend, in the hope that it would discourage his sexual advances.

Early in the spring of 2011, defendant's son moved into the home, bringing several guns with him. Defendant told plaintiff that his son was mentally unstable and had a felony conviction. While she was working in the home on May 11, a heated argument erupted between defendant and his son. The men struggled over possession of a gun. The son

fired the gun in the direction of defendant and, at another point, the gun was pointed in plaintiff's direction. When plaintiff tried to call 9-1-1, defendant's son "body slammed" her to the floor and ripped the telephone off the wall. The son told her not to call the police, because he did not want to go to jail. Defendant asked her not to call, too, but she used her cell phone to reach the police, who intervened.

After the May 11 incident, plaintiff stopped home-care for the woman and never returned to defendant's house. Defendant asked plaintiff not to quit. On June 6, 2011, plaintiff filed a complaint in circuit court against defendant alleging tort claims based on defendant allowing his son to live in the house with a firearm. On June 20, defendant attempted to telephone plaintiff, and, when she did not answer, he sent her the following text messages:

"Tambri, are u suing me? I'd like to know why? Call me please.

"Is this all you have been about is money. You're a real piece of work dearie."

During this time, plaintiff did not call defendant, did not initiate any contact with him, and was not in his presence.

Two days later, on June 22, defendant petitioned for a restraining order against plaintiff, invoking ORS 124.005 to 124.040, the Elderly Persons and Persons with Disabilities Abuse Prevention Act (Abuse Prevention Act or Act). Defendant alleged that he was a disabled person.[1] And, he alleged that plaintiff provided care both for defendant and for his domestic partner. He attested, among other things, that plaintiff caused him physical harm by withholding services necessary for his well-being; willfully causing him physical injury; taking his money or property; threatening to have her boyfriend injure him and his domestic partner; and proposing to insure the life of his domestic partner, provide lethal medications, and take 75 percent of the insurance proceeds. Defendant represented that plaintiff had been convicted in a

---

[1] The parties do not dispute that defendant is a person with disabilities under the Act. He alleged that he suffers, among other things, post-traumatic stress disorder, depression, cancer, sleep disorder, hearing loss, degenerative disc disease, a rotator cuff tear, left knee and right hip pre-replacement surgery, and left arm neuropathy.

prostitution sting operation and that she continued to advertise as an escort for adult entertainment on an Internet web site. As an exhibit, he attached a posting on the site from a "Vickie" with a photograph of part of a nude body.

As provided in ORS 124.020(1), defendant's petition was granted *ex parte*, and a restraining order was served upon plaintiff. In response, plaintiff moved for a hearing and denied nearly all of the allegations in the petition. She denied that she provided care for defendant or had any duty to provide care to him. Other than resisting his unwanted contact, she contended that she had never struck defendant or threatened him harm. She allowed only that, after defendant "pinched her nipple," she "slapped him on the arm" and told him that she "would take this further if he did this—if he touched [her] again inappropriately." After hearing testimony from both parties, the trial court found that "the evidence is of even weight," and, because defendant was the proponent of the restraining order, concluded that defendant had failed to carry his burden. The court set aside the restraining order.

Thereafter, plaintiff amended her complaint to add the claims for IIED and wrongful initiation of a civil proceeding. Plaintiff alleged that defendant lacked probable cause to seek a restraining order because plaintiff had not abused him and he was not in imminent and present danger of further abuse. Plaintiff alleged that defendant acted with malice or for a purpose other than securing an adjudication, as shown by defendant's inclusion of false and derogatory information about plaintiff in the petition, the only purpose of which would be to punish plaintiff for reporting the May 11 incident to the police.[2]

Defendant moved for summary judgment on all of plaintiff's claims. The trial court granted defendant's summary judgment motion and entered a general judgment dismissing plaintiff's claims against defendant that are at

---

[2] Plaintiff added in argument to the trial court that, because defendant's petition followed soon after plaintiff's complaint and two days after defendant's text messages about the complaint, the facts also allowed a reasonable inference that the petition was retaliation for plaintiff's complaint and, thus, was undertaken with malice.

issue here. Plaintiff voluntarily dismissed her remaining claims under ORCP 54 A.

On appeal, the parties' arguments require that we consider whether there is a genuine issue of material fact and whether defendant was entitled to judgment as a matter of law. ORCP 47 C; *Dial Temporary Help Services*, 255 Or App at 610. To do that, we compare the law on a claim of wrongful initiation of civil proceedings with the evidence that the parties presented.

In Oregon, the elements of a claim for wrongful initiation of a civil proceeding are (1) defendant's initiation and prosecution of a judicial proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) the absence of probable cause to prosecute the action; (4) the existence of malice or, in other words, a primary purpose other than securing an adjudication of the claim; and (5) damages. *SPS of Oregon, Inc. v. GDH, LLC*, 258 Or App 210, 218, 309 P3d 178 (2013); *Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 237-38, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005). In this case, the elements of probable cause and malice are the dispositive issues. Our review considers probable cause—particularly, two requirements for a restraining order—and, finally, the evidence of malice.

"Probable cause" means that the person initiating the civil action "reasonably believes" that he or she has a good chance of prevailing, which requires that he or she must have held that belief subjectively and that belief must be objectively reasonable. *Pereira v. Thompson*, 230 Or App 640, 675, 217 P3d 236 (2009) (citing *Roop*, 194 Or App at 238). Whether a defendant has probable cause to initiate a proceeding is a question of law for the court only if the facts or inferences are undisputed. If the facts are disputed, then a jury must resolve those disputed facts, and the court must instruct the jury on what facts constitute probable cause for the plaintiff's claim. *Varner v. Hoffer*, 267 Or 175, 178-79, 515 P2d 920 (1973); *Roop*, 194 Or App at 239. *See also Perry v. Rein*, 187 Or App 572, 578, 71 P3d 81 (2003) ("In general, if the facts germane to the determination of probable cause are in dispute, then the case must be decided by a factfinder before the legal determination of probable cause is made.").

Plaintiff's claim asserted that defendant did not have probable cause to pursue a restraining order against plaintiff. The Abuse Prevention Act permits a protected individual to seek a restraining order (a) if the person has "been the victim of abuse within the preceding 180 days" and (b) if the person "is in immediate and present danger of further abuse from the abuser." ORS 124.010(1)(a).[3] Plaintiff could challenge defendant's probable cause to pursue a restraining order if defendant lacked a basis *either* to claim past abuse *or* an immediate and present danger of continued abuse.

"Abuse" is given a lengthy and varied definition by the statute. The term includes the "[w]illful infliction of physical pain or injury" or threatening or harassing comments or conduct "of such a nature as to threaten significant physical or emotional harm * * *." ORS 124.005(1)(d), (e).

Defendant argues that there was probable cause for the petition for a restraining order because plaintiff admitted that she slapped defendant and threatened to "take this further" if he touched her breast again. Defendant denies that he made any inappropriate contact, but he is quick to urge that, because plaintiff admits the slap, her act constituted a "willful infliction of physical pain," which suffices as "abuse" under ORS 124.005(1)(d). Defendant contends that plaintiff's statement that she would "take this further" if he touched her inappropriately again, likewise, qualifies as threatening physical or emotional harm to defendant.

Defendant forgets the court's role on summary judgment. Although plaintiff admitted slapping defendant's arm, her admission of a defensive gesture does not necessarily require a jury to find that the slap constituted a "willful infliction of physical pain or injury." Plaintiff's reaction to inappropriate contact may not have caused genuine pain, and, more importantly, may not have been a "willful

---

[3] ORS 124.010(1)(a) provides, in relevant part that

"an elderly person or a person with a disability who has been the victim of abuse within the preceding 180 days or a guardian or guardian ad litem of an elderly person or a person with a disability who has been the victim of abuse within the preceding 180 days may petition the circuit court for relief under ORS 124.005 to 124.040, if the person is in immediate and present danger of further abuse from the abuser."

infliction" of pain under such defensive circumstances within the meaning of ORS 124.005(1)(d). Defendant's version of the incident differed. In deposition, he testified that plaintiff struck him on the chest and shoulder with a closed fist, causing pain for a couple of minutes. The differing accounts of the incident serve only to illustrate a genuine dispute of material fact. Plaintiff's version of the incident could allow a factfinder to conclude that defendant suffered no "abuse" that would have provided probable cause to petition. In such a dispute, there is only one prescription: A "jury must decide the facts and the court must instruct the jury what facts constitute probable cause." *Varner*, 267 Or at 178-79.

For the same reason, we cannot accept the argument that plaintiff's statement that she would "take this further," if touched again, qualifies, as a matter of law, as a threat that presented an "immediate and present danger" under the Abuse Prevention Act.[4] A "threat" is "a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." *State v. Rangel*, 328 Or 294, 303, 977 P2d 379 (1999). There was nothing in plaintiff's statement, given as an immediate response to offensive contact, that would require the court to conclude, as a matter of law, that plaintiff presented an "immediate and present danger of further abuse." *See* ORS 124.010(1)(a). Indeed, plaintiff left defendant's home May 11 and had no contact with him whatsoever in the 42 days before defendant's petition, when he swore to a fear of imminent and present danger of further abuse.

Defendant's showing failed to establish, as beyond dispute, both the fact of recent past abuse and the fact of "present danger," each of which is necessary for an abuse petition. Moreover, defendant did not deny that his petition had asserted that plaintiff abused him by denying him essential services, when, in truth, she was not engaged as *his* caregiver. Viewed in the light favorable to plaintiff, the

---

[4] Defendant also accused plaintiff of a comment in April 2011, when a bungee cord snapped, she thought a tractor's cowling had been broken, and he told her "just be cool." He recalled that she replied that she would "beat (defendant's) ass if (he) didn't shut up." Plaintiff argued that both parties spoke to each other in coarse language.

record does not contain evidence so as to prove that defendant had probable cause, as a matter of law, which would have defeated plaintiff's wrongful initiation claim.

We reach the same conclusion on the element of malice or "the existence of a primary purpose other than that of securing an adjudication of the claim[.]" *Alvarez v. Retail Credit Ass'n*, 234 Or 255, 259-60, 381 P2d 499 (1963). Plaintiff alleged that defendant included false and derogatory information in his petition, such as his allegation that plaintiff had been arrested for prostitution and continued to engage in prostitution. By pointing to a matter seemingly so immaterial to the petition, plaintiff offered evidence that could support a finding that defendant acted with personal animus or acted in retaliation for plaintiff's call to police about the May 11 incident. Plaintiff's evidence sufficed to suggest that defendant may have acted with a purpose other than securing a petition for a restraining order. Again, because we must view the record in the light most favorable to plaintiff, we conclude that a genuine issue of material fact remained so as to preclude summary judgment concerning malice.

Due to the open questions of probable cause and malice, the trial court erred when it dismissed plaintiff's wrongful initiation claim.

Reversed and remanded on plaintiff's claim of wrongful initation of a civil proceeding; otherwise affirmed.