Argued and submitted November 18, 2019, affirmed May 25, 2022

I. R. S.,
*Petitioner-Respondent,*

*v.*

Robert Dale HANINGTON,
*Respondent-Appellant.*

Washington County Circuit Court
17PO10431; A167834

512 P3d 817

Respondent appeals a restraining order that prohibited him from "abusing, intimidating, molesting, interfering with, or menacing" petitioner in violation of ORS 124.005(1)(e), the provision that defines "abuse" for purposes of obtaining a restraining order under the Elderly Persons and Persons With Disabilities Abuse Prevention Act (EPPDAPA). According to respondent, the trial court erred in rejecting his argument that ORS 124.005(1)(e) involves protected speech and must be construed to incorporate the heightened standard of proof described in *State v. Rangel*, 328 Or 294, 977 P2d 379 (1998), in order to avoid a constitutional overbreadth problem; alternatively, respondent argues that, even if the *Rangel* standard does not apply, the evidence was legally insufficient to meet the standard under EPPDAPA. *Held*: The narrow range of communicative conduct that constitutes abuse under EPPDAPA will only rarely include privileged speech when compared to permissible applications of the statute, such that those rare circumstances can be dealt with either by treating the statute as implicitly excluding that type of privileged speech or by way of an as-applied challenge. For that reason, the Court of Appeals did not need to consider whether a *Rangel*-like narrowing construction could save the statute from overbreadth. And, after reviewing the record and the trial court's findings in support of its conclusion that petitioner met his statutory burden, the court concluded that the trial court did not err in granting the restraining order.

Affirmed.

David G. Gannett, Judge pro tempore.

Mark Kramer argued the cause for appellant. Also on the briefs was Kramer & Associates.

Caleb D. Mammen argued the cause for respondent. Also on the brief was Oregon Law Center.

Before Tookey, Presiding Judge, and Aoyagi, Judge, and Armstrong, Senior Judge.

ARMSTRONG, S. J.

Affirmed.

**ARMSTRONG, S. J.**

This case presents an opportunity to address how the Supreme Court's jurisprudence concerning free speech, particularly *State v. Rangel*, 328 Or 294, 977 P2d 379 (1999), bears on the construction and application of ORS 124.005 (1)(e). That provision is one of several that define "abuse" for purposes of obtaining a restraining order under the Elderly Persons and Persons With Disabilities Abuse Prevention Act (EPPDAPA). Respondent appeals a restraining order that prohibited him from "abusing, intimidating, molesting, interfering with, or menacing" petitioner, asserting that the offending conduct was speech that failed to meet the heightened standard of proof required to avoid an overbreadth problem under *Rangel*. We conclude that EPPDAPA is not constitutionally overbroad in its definition of abuse and does not require the type of saving construction that was at issue in *Rangel*. Because the trial court applied the correct legal standard under EPPDAPA and the evidence supported the court's findings, we affirm.[1]

Petitioner, who is disabled, lives in an apartment directly above respondent's apartment, and the two men have a long history of acrimony. Petitioner is often awake at night and moves about his apartment, causing respondent to hear noise in his apartment below. Respondent, who also is disabled, has medical needs that require him to get a good night's sleep, and he is awakened by and becomes angry over petitioner's night-time noise-producing activities.

On two occasions, respondent became so upset with petitioner that he screamed at him. On September 27, 2017, respondent shouted obscenities at petitioner from outside of petitioner's apartment, yelling, "come on pussy," "come out, you know, and fight me like a man." Respondent told petitioner that he would "fuck [him] up." Petitioner understood respondent to communicate a desire to cause physical harm and feared that he would be harmed if he left his apartment. Petitioner called 9-1-1 dispatch during that incident, and respondent's voice can be heard on a recording of the call,

---

[1] Petitioner filed a notice of probable mootness in this case, and respondent filed a response arguing that the appeal is not moot. We conclude that the appeal is not moot and proceed to its merits.

yelling, "I'm right here, fuck you." The dispatch operator confirmed with petitioner that he was safe in his apartment and advised him to lock his door. Petitioner testified that he stayed in his apartment throughout the incident and did not look outside, because he was frightened.

The second incident occurred early in the morning of October 21, 2017. Respondent pounded on the walls of his own apartment and yelled at petitioner above, calling him a "bitch," a "fuck," "motherfucker," and "queer motherfucker." He also yelled, "you know you want me," and "you know you want my dick in your ass." Petitioner testified that that incident triggered his past trauma as a sexual-assault survivor and caused him to fear that respondent would sexually assault him. Petitioner initiated this proceeding, seeking to restrain respondent from further abusive conduct.

Respondent denied some of the conduct and denied that he had an intention to harm petitioner, but he did not dispute that some of the objectionable conduct occurred or that it caused petitioner subjective fear. He testified that he had been drinking heavily on the night of the first incident and that his conduct might have been prompted by intoxication.

ORS 124.010(1)(a) provides that "an elderly person or a person a with a disability who has been the victim of abuse within the preceding 180 days may petition the circuit court for relief * * *, if the person is in immediate and present danger of further abuse from the abuser." The court may issue an order restraining the respondent from "abusing, intimidating, molesting, interfering with or menacing the elderly person or person with a disability, or attempting to abuse, intimidate, molest, interfere with or menace the person." ORS 124.020(1)(c). To establish an entitlement to a restraining order, a petitioner has the burden to prove, by a preponderance of the evidence, (1) that the person is an "elderly person or a person with disability," (2) who was abused by the respondent, (3) that the abuse occurred within 180 days before the initial order, and (4) that the person is in immediate and present danger of further abuse. ORS 124.010(2); *Doyle v. Rohrbach*, 257 Or App 523, 525, 306 P3d 789 (2013) (describing burden of proof).

ORS 124.005 describes many types of "abuse" that will support the issuance of a restraining order under the EPPDAPA.[2] As pertinent here, ORS 124.005(1)(e) defines "abuse" to include:

"Use of derogatory or inappropriate names, phrases or profanity, ridicule, harassment, coercion, threats, cursing, intimidation or inappropriate sexual comments or conduct of such a nature *as to threaten significant physical or emotional harm* to the elderly person or person with a disability."

(Emphasis added.)

The trial court found that, during the two described instances, respondent had delivered "a tirade laden with

---

[2] ORS 124.005 provides:

"(1) 'Abuse' means one or more of the following:

"(a) Any physical injury caused by other than accidental means, or that appears to be at variance with the explanation given of the injury.

"(b) Neglect that leads to physical harm through withholding of services necessary to maintain health and well-being.

"(c) Abandonment, including desertion or willful forsaking of an elderly person or a person with a disability or the withdrawal or neglect of duties and obligations owed an elderly person or a person with a disability by a caregiver or other person.

"(d) Willful infliction of physical pain or injury.

"(e) Use of derogatory or inappropriate names, phrases or profanity, ridicule, harassment, coercion, threats, cursing, intimidation or inappropriate sexual comments or conduct of such a nature as to threaten significant physical or emotional harm to the elderly person or person with a disability.

"(f) Causing any sweepstakes promotion to be mailed to an elderly person or a person with a disability who had received sweepstakes promotional material in the United States mail, spent more than $500 in the preceding year on any sweepstakes promotions, or any combination of sweepstakes promotions from the same service, regardless of the identities of the originators of the sweepstakes promotion and who represented to the court that the person felt the need for the court's assistance to prevent the person from incurring further expense.

"(g) Wrongfully taking or appropriating money or property, or knowingly subjecting an elderly person or person with a disability to alarm by conveying a threat to wrongfully take or appropriate money or property, which threat reasonably would be expected to cause the elderly person or person with a disability to believe that the threat will be carried out.

"(h) Sexual contact with a nonconsenting elderly person or person with a disability or with an elderly person or person with a disability considered incapable of consenting to a sexual act as described in ORS 163.315. As used in this paragraph, 'sexual contact' has the meaning given that term in ORS 163.305."

profanity and sexual acts" "that could readily invoke emotional harm and/or a fear of safety, emotionally or psychologically." The court concluded that the conduct constituted "abuse" within the meaning of ORS 124.005(1)(e). And, because the court found that it was unlikely that petitioner would change his night-time behavior or that respondent would suppress his frustrations, the court also found that petitioner was in an immediate and present danger of further abuse. The court declined to consider respondent's contention that, to survive a constitutional overbreadth challenge when communicative conduct is involved, ORS 124.005(1)(e) had to be construed to require proof that the communicative conduct gave rise to an objectively reasonable fear of "imminent and serious personal violence," *Rangel*, 328 Or at 303 (citing *State v. Moyle*, 299 Or 691, 703-05, 705 P2d 740 (1985)), preferring to leave that issue to the appellate courts. Thus, the court concluded that the statutory criteria for a restraining order had been satisfied and entered the order in favor of petitioner.

On appeal, respondent contends that the trial court erred in rejecting his argument that the heightened *Rangel* standard is applicable and, further, that petitioner failed to meet that burden. Respondent concedes that he engaged in taunting and verbal harassment of petitioner, including threatening sexual acts, but he contends that that conduct is not sufficient to be subject to proscription under the constitutional standard established in *Rangel*. Alternatively, in the event that we conclude that the *Rangel* standard is not applicable, respondent contends that the evidence was insufficient to prove that petitioner was in immediate and present danger of further abuse.

Petitioner responds that the trial court did not err, because *Rangel* has no application in this context. Petitioner reasons that the overbreadth issue with which the court was concerned in *Rangel* arose in a criminal context and depended on a line of cases following *State v. Robertson*, 293 Or 402, 649 P2d 569 (1982), relating to constitutional free-speech issues in criminal prosecutions. In petitioner's view, those concerns do not extend to the civil restraining order context. Rather, petitioner contends, the proper analysis is

found in case law addressing free speech in the context of civil tort claims.

We begin by addressing respondent's contention that ORS 124.005(1)(e) must be construed to incorporate the so-called *Rangel* standard to avoid constitutional overbreadth. Article I, section 8, of the Oregon Constitution provides:

> "No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

In *Robertson*, 293 Or at 411-13, the Supreme Court provided a framework for analyzing laws that implicate speech or expression and thereby potentially run afoul of Article I, section 8. Under that framework, when a law focuses on forbidden effects but the proscribed means of causing those effects includes expression, then the law is analyzed for overbreadth—*viz.*, whether it "announces a prohibition that reaches conduct which may not be prohibited." *Id.* at 410; *see also State v. Garcias*, 296 Or 688, 699 n 10, 679 P2d 1354 (1984) (holding that *Robertson* had refined the overbreadth analysis by "recogniz[ing] that a statute which reaches constitutionally protected behavior only rarely when compared with legitimate applications of the law need not succumb to an overbreadth attack. Such a statute may be interpreted as impliedly excluding the protected activity from coverage."). If the statute is overbroad—that is, it reaches protected expression more than only rarely, the court must consider whether a "saving construction is necessary, and if so, whether it is possible." *Robertson*, 293 Or at 413; *see Garcias*, 296 Or at 699 n 10.

In *Rangel*, the court applied that framework to the criminal stalking statute, ORS 163.732(1). That statute makes it a crime when a person "knowingly alarms or coerces another person or a member of that person's immediate family or household by engaging in repeated and unwanted contact with the other person." ORS 163.732(1). The court in *Rangel* began its analysis by noting that the statute was directed at a forbidden effect—repeated and unwanted contacts—but that expression was one means

by which that forbidden effect could be produced. 328 Or at 299. For that reason, the court had to consider whether the statute was overbroad—more specifically, "whether [the statute] reaches privileged communication and, if it does so more than rarely, [then] whether a narrowing construction is possible to save it from overbreadth." *Id.* (footnote omitted).

At the relevant time, ORS 163.730(3) defined "contact" to include:

"(d)  Sending or making written communications in any form to the other person;

"(e)   Speaking with the other person by any means;

"(f)   Communicating with the other person through a third person;

"*****

"(h)   Communicating with a third person who has some relationship to the other person with the intent of affecting the third person's relationship with the other person;

"(i)   Communicating with business entities with the intent of affecting some right or interest of the other person[.]"

That definition included almost any form of communication with the victim, including writing or speaking to the victim in any way or contacting the victim through a third party. Given that expansive definition, the court in *Rangel* could not "say that the instances of potential impermissible application of the stalking statute will be rare, in part because the range of communicative acts that the statutory term 'contact' includes is quite broad." 328 Or at 302. Thus, the court turned to whether it was possible to give the statute a narrowing interpretation so as to avoid overbreadth.

In conducting that analysis, the court explained that ORS 163.730(1) defined "alarm" to mean "to cause apprehension or fear resulting from the perception of danger." The court reasoned that, in defining "alarm," "the legislature also contemplated, as a logical necessity, that a speech-based contact would be punishable as an element of

stalking only if it constitutes a threat." *Rangel*, 328 Or at 303. The court was satisfied that ORS 163.730 could be construed narrowly to require that the "alarm" and, hence, the "threat" on which the stalking conviction depended must be one that causes an objectively reasonable fear of imminent physical injury, thereby focusing on the intended harmful effect of the proscribed conduct and limiting the risk that the statute could apply to constitutionally protected expression. *Id*.[3]

Although we have once noted the heightened *Rangel* standard of proof in relation to a case involving the EPPDAPA,[4] we have never undertaken a *Rangel*-type constitutional overbreadth analysis of ORS 124.005(1)(e). Contrary to petitioner's argument, that is the applicable analysis even outside the criminal context. The protections of Article I, section 8, are not limited to the criminal context, either by constitutional text or construction, and we and the Supreme Court have employed a *Rangel*-type analysis outside the criminal context. *See, e.g.*, *Delgado v. Souders*, 334 Or 122, 142 n 11, 46 P3d 729 (2002) (concluding that *Rangel* eliminates overbreadth concerns relating to civil stalking statute, ORS 30.866(1)); *Hanzo v. deParrie*, 152 Or App 525, 542, 953 P2d 1130 (1998), *rev den*, 328 Or 418 (1999) (explaining that ORS 30.866 did not differ in its material elements or in its remedies from its criminal stalking counterpart, which both "implicate the coercive use of governmental authority, including criminal sanctions, to restrain conduct involving expression").

---

[3] Our case law has since construed that standard to require proof of an objectively reasonable fear of imminent bodily injury. *Outlaw v. Richey*, 301 Or App 18, 456 P3d 348 (2019).

[4] In *DeHarpport v. Johnson*, 270 Or App 681, 348 P3d 1192 (2015), the plaintiff brought an action for, among other claims, wrongful initiation of civil proceedings, alleging that the defendant had filed a petition for a restraining order under the EPPDAPA without probable cause. In rejecting the defendant's contention that, as a matter of law, the plaintiff's threat that she would "take this further" was a threat that presented an "immediate and present danger" under the EPPDAPA, we noted the Supreme Court's definition of a "threat" in *Rangel* as "a communication that instills in the addressee a fear of imminent and serious personal violence from the speaker, is unequivocal, and is objectively likely to be followed by unlawful acts." We held that "[t]here was nothing in plaintiff's statement, given as an immediate response to offensive contact, that would require the court to conclude, as a matter of law, that plaintiff presented an 'immediate and present danger of further abuse'" under the statute. *Id*.

We therefore turn to whether the particular type of restraining order authorized by the EPPDAPA is overbroad and, if so, whether, as in *Rangel*, a narrowing construction of the statute is possible.

ORS 124.005(1)(e) defines prohibited abuse under the EPPDAPA to include twelve different types of speech. The statute is not directed at the content of the speech but at the harmful effect of that speech on the protected person— the significant physical or emotional harm to the protected person. *Robertson*, 293 Or at 417. But, because ORS 124.005(1)(e) defines some prohibited conduct in terms of speech, we must, as in *Rangel*, examine whether it is overbroad because it "more than rarely" reaches privileged communication rather than the harmful effects of physical or emotional harm; and, if it does reach privileged communication more than rarely, we must consider whether a narrowing construction can save the statute from overbreadth. *Rangel*, 328 Or at 299-300.

Our analysis begins and ends with whether ORS 124.005(1)(e) is overbroad. Unlike the expansive list of communicative conduct that constitutes "contact" under ORS 163.730(3), the definition of abuse in ORS 124.005(1)(e) is narrowly focused on types of expression directed at harming the protected person—"derogatory or inappropriate names, phrases or profanity, ridicule, harassment, coercion, threats, cursing, intimidation or inappropriate sexual comments[.]" Yet, even so, a restraining order is not available under EPPDAPA merely because the protected person hears speech of that type. The speech must be "of such a nature as to threaten significant physical or emotional harm to the elderly person or person with a disability." ORS 124.005 (1)(e).

That latter phrase imposes an objective standard as to the effect of the communication, that is, from an objective standpoint, the speech must both threaten physical or emotional harm, and the harm must be "significant," that is, of consequence to the protected person. *See Webster's Third New Int'l Dictionary* 2116 (unabridged ed 2002) (defining "significant" as "having or likely to have influence or effect : deserving to be considered : IMPORTANT, WEIGHTY, NOTABLE").

Moreover, EPPDAPA only applies when an elderly or disabled person seeks to prevent further, imminent abuse. A person is entitled to a restraining order under EPPDAPA if that person is in "immediate and present danger of further abuse from the respondent" and "has been the victim of abuse committed by the respondent within the 180 days preceding the filing of the petition." ORS 124.010(1)(a). That context is significant: For the EPPDAPA to reach privileged speech, the communication must be one that the speaker is privileged to make to the elderly or protected person *despite* the fact that it is unwelcome in their private relationship and despite the fact that it creates an imminent danger in the form of a threat of significant physical or emotional harm.

To the extent that there is privileged speech that objectively threatens significant physical or emotional harm to an elderly person or a person with a disability who seeks to stop that imminent, unwelcome contact, it is only at the extreme margins of the conduct addressed by the statute. That is not to say that there are no circumstances where expression that gives rise to a restraining order under EPPDAPA might be expression that is protected against restriction by Article I, section 8. *See Moyle*, 299 Or at 702 ("Article I, section 8, applies with equal force to protect free expression in personal and institutional relationships."). It is to say that it is so rare when compared to legitimate applications of the law that it can be dealt with either by treating the statute as implicitly excluding that speech or by way of an as-applied challenge. *See Garcias*, 296 Or at 699 n 10 (describing that approach); *Robertson*, 293 Or at 435 n 30 (explaining that possibly privileged expression under subsections (1)(a) through (c) of ORS 163.275, the coercion statute that the court invalidated in *Robertson*, "could be protected by recognizing exceptions to their coverage rather than by invalidation for overbreadth, but that question [was] not presented" in the case); *accord State v. Smith*, 319 Or App 388, 397, 510 P3d 217 (2022) (holding that "ORS 166.155(1)(c)(A) has elements that neither *Moyle* nor *Rangel* had, including the requirement that the person act intentionally. That mental state, in conjunction with the other elements of the law, limit the law's reach to constitutionally proscribable threats.").

In sum, the provisions of ORS 124.005 and ORS 124.010 stand in contrast with the broadly defined offense in *Rangel*. The narrow range of communicative conduct that constitutes abuse under EPPDAPA will only rarely include privileged speech when compared to permissible applications of the statute, so we need not consider whether a *Rangel*-like narrowing construction could save it from overbreadth.[5]

Having concluded that the *Rangel* standard does not apply under EPPDAPA, we briefly address respondent's contention that the evidence was nevertheless legally insufficient to meet the statutory standard. Having reviewed the record and the trial court's findings in support of its conclusion that petitioner met his statutory burden, we conclude that the trial court did not err in granting the restraining order.

Affirmed.

---

[5] Although we need not reach a narrowing construction, we note that, contrary to respondent's suggestion, the *Rangel* standard itself would not provide a permissible narrowing construction under the EPPDAPA. In *Rangel*, the court construed the statute to be limited to imminent threats of physical injury; here, the legislature expressly had a broader intention and swept under the plain language of the statute threats of emotional harm.

We recognize that our conclusion means that restraining orders under ORS 124.005(1)(e), as distinct from Family Abuse Prevention Act orders, ORS 107.700 to 107.735, and stalking protective orders, ORS 163.738; ORS 30.866, are authorized for a threat of significant emotional harm alone, not based on a fear of physical injury. "[L]egislative power extends to protecting persons against harmful conduct by others, or whatever the legislature regards as harmful. It extends to protection against psychic or emotional as well as physical or financial harms." *Moyle*, 299 Or at 699. There is no constitutional infirmity in a prohibition of speech-based conduct that causes emotional harm alone, so long as the harm is not simply "the other side of the coin of a prohibition of the speech or writing itself," that is, solely the harm of seeing or hearing the words that lawmakers wish to suppress. *Id.* The text of ORS 124.005(1)(e) shows that its focus is not on the prohibition of the words themselves or solely on protecting people against seeing or hearing the words, but on protecting against the significant physical or emotional harm that the words can cause.